IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| WAYNE HAILEY, | ) | |
| | ) | Case No. 4:06-CV-00039 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | By: Jackson L. Kiser |
| Defendant. | ) | Senior United States District Judge |

Before me is the *Report and Recommendation* of the United States Magistrate Judge. The Magistrate Judge recommends reversing the Commissioner's final decision, which denied the Plaintiff's claim for benefits; granting the Plaintiff's motion for summary judgment; entering judgment for the Plaintiff; and recommitting the case to the Commissioner solely to calculate and pay benefits. The Commissioner filed *Objections to the Magistrate Judge's Report and Recommendation* ("*Objections*"). I have reviewed the Magistrate Judge's *Report and Recommendation*, the Commissioner's *Objections*, and relevant portions of the record. The matter is now ripe for decision.

For the reasons stated below, I will **reject** the Magistrate Judge's *Report and Recommendation* and will **sustain** the Commissioner's *Objections*. The Commissioner's final decision denying the Plaintiff's claim for benefits will therefore be **affirmed** and judgment will be **granted** for the Commissioner. This case will be **dismissed** from the docket of this Court.

I.  **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

The Plaintiff, Wayne Edward Hailey ("Hailey"), is a fifty-three-year-old man with a ninth grade education. He lives in a three room house, which he owns. For over a year, Hailey

1

has lived without electricity. In the winter, Hailey uses a wood burning stove to keep warm and heat water for "bird baths." He receives food stamps and cares for forty cats with the help of donations and a small amount of income he receives each month from renting out part of his home as storage space. Hailey frequently walks or catches a ride to the local country store, which is approximately six miles from his home. At the store he listens to the radio with the owners and performs simple tasks like sweeping or collecting money from customers. In exchange for his help, the store owners give Hailey food for himself and his cats. Additionally, when he has difficulty reading a piece of mail, the people at the store assist him.

In 1972, Hailey enlisted in the Navy and worked in the kitchen. In less than a year, the Navy discharged him from service. Hailey asserts that the Navy told him that he "couldn't adjust to their lifestyle." Thereafter, he served two lengthy prison sentences: one from 1981 to 1986 for armed robbery and another from 1988 to 2000 for second degree murder. Upon his second release from prison, Hailey worked on a farm. His duties included pulling tobacco, lifting bales of tobacco, changing equipment, and driving a tractor. He left that job as a result of his impairments in July of 2003.

On August 12, 2003, Hailey protectively applied for Supplemental Security Income ("SSI") benefits. In his application, Hailey claimed that he suffered from high blood pressure, arthritis, the inability to "stay in heat," a slipped back disc, and a "busted leg." As a result, he claimed that he was unable to work after July 2003. On May 26, 2005, the Administrative Law Judge ("ALJ") determined that Hailey was not disabled because he could still perform light work. The Appeals Council remanded the case to the ALJ to consider additional evidence of mental impairment, on September 7, 2005.

The additional evidence of mental impairment ultimately consisted of two psychologist's reports. Dr. Samuel J. Fletcher, Ph.D. ("Dr. Fletcher") wrote the first report after examining Hailey on May 26, 2005, at the request of Hailey's attorney. During the examination, Dr. Fletcher administered the Wechsler Adult Intelligence Scale, Third Edition ("WAIS-III") to Hailey. The results of the test indicated that Hailey has a verbal intelligence quotient ("IQ") of 71, a performance IQ of 70, and a full-scale IQ of 68. Dr. Fletcher concluded that Hailey could not perform detailed or complex tasks and would often find simple and repetitive tests challenging. Hailey might be able to regularly attend work, Dr. Fletcher determined, but he would need additional supervision. According to Dr. Fletcher, auditory hallucinations or paranoia would not interfere with Hailey's ability to work. Dr. Fletcher suspected that Hailey could accept instruction from supervisors with considerable help. While Hailey could not interact with the general public, Dr. Fletcher wrote that he might be able to interface with some coworkers. Finally, Dr. Fletcher concluded that "[t]he stresses encountered in competitive work frequently will result in confusing" Hailey. Dr. Fletcher diagnosed Hailey with a differential diagnosis between mild mental retardation a cognitive disorder not otherwise specified. He also concluded that Hailey suffered from a depressive disorder, alcohol dependence, nicotine dependence, and an anti-social personality disorder.

Dr. Fletcher completed a form that assessed the effects of Hailey's mental limitations on his ability to function in a work environment. Dr. Fletcher found that Hailey had no ability to understand, remember, and carry out complex job instructions or understand, remember and carry out detailed but not complex job instructions. He found that Hailey had a seriously limited but not precluded ability to (1) follow work rules; (2) deal with the public; (3) use judgment; (4)

3

deal with work stress; (5) function independently; (6) understand, remember, and carry our simple job instructions; (7) maintain personal appearance; (8) behave in an emotionally stable manner; and (9) relate to others in a predictable fashion in social situations. Last, Dr. Fletcher determined that Hailey had a limited but satisfactory ability to (1) relate to coworkers; (2) interact with supervisors; (3) maintain action or concentration; and (4) demonstrate reliability in social interactions with others.

Hailey also underwent a psychological examination on January 12, 2006, with Dr. Karen Russell, Psy.D. ("Dr. Russell"). When Dr. Russell administered the WAIS-III to Hailey, he scored a verbal IQ of 85, a performance IQ of 75, and a full scale IQ of 78. Dr. Russell diagnosed Hailey as having a not otherwise specified anxiety disorder, a history of alcohol abuse, and an antisocial personality disorder with inactive symptoms. Dr. Russell determined that Hailey had a low average to high borderline ability to engage in decision making tasks. She wrote that he could maintain regular attendance if he returned to work. She believed that he would benefit from simple and repetitive work duties. Dr. Russell found that he would most likely encounter difficulties in interactions with coworkers and the general public. Consequently, his supervisor would need to understand these limitations and possibly have minimal contact with Hailey. As a result of Hailey's light work at the local store, Dr. Russell concluded that he could work regularly. Most importantly for this appeal, Dr. Russell concluded that

> [Hailey] is not likely able to tolerate the usual stressors encountered in competitive work. If work was not interpersonally based and he was left alone to perform simple repetitive tasks, he would quite possibly perform independently without too much difficulty; however, if there were interruptions in the work and he was asked to be doing additional activities, he would likely have increasing episodes of anxiety that would then lead to him becoming possibly violent and/or

4

walk off the job.

In light of these conclusions, Dr. Russell assessed Hailey's work related functional ability. She determined that he had a moderately limited but satisfactory ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) interact appropriately with the public, supervisor(s), and coworkers; and (4) respond appropriately to work pressures in a usual work setting and changes in a routine work setting. She also found that he had mild limitations but could still function well in the following areas: (1) understanding and remembering short, simple instructions; (2) carrying out short, simple instructions; and (3) making judgments on simple work-related decisions.

On remand, the ALJ once more determined that Hailey was not disabled because he could perform light work. The Appeals Council denied Hailey's request for review, and the ALJ's decision became the final decision of the Commissioner on June 16, 2006.

Next, Hailey appealed the Commissioner's decision to this court on July 21, 2006, pursuant to 42 U.S.C.A. §§ 405(g), 1383(c)(3) (Supp. 2006). I referred the case to United States Magistrate Judge B. Waugh Crigler on August 4, 2006. Both sides filed motions for summary judgment. On March 2, 2007, Magistrate Judge Crigler issued a Report and Recommendation in which he recommended that I reverse the Commissioner's final decision, grant Hailey's Motion for Summary Judgment, enter judgment for Hailey, and recommit the case to the Commissioner for the sole purpose of calculating pay and proper benefits. The Commissioner filed a timely objection to the Report and Recommendation on March 13. Thus, this issue is now ripe for decision.

5

## II.  STANDARD OF REVIEW

Congress limits judicial review of decisions by the Social Security Commissioner.  I am required to uphold the decision when: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard.  42 U.S.C.A. § 405(g); *see also, Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996).  "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The Fourth Circuit has further defined substantial evidence as being more than a scintilla but less than a preponderance of the evidence.  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

## III.  DISCUSSION

The controversy in this case arose from the ALJ's decision at step five of the sequential review mandated by 20 C.F.R. § 416.920(a) (2006) to determine if an adult is disabled.  At step five, the ALJ must determine if the claimant's impairments prevent him or her from making an adjustment to new work.  20 C.F.R. § 416.920(g).  To show that the claimant can make that adjustment, the Commissioner must "provide evidence about the existence of work in the national economy that [the claimant] can do given [his or her] residual functional capacity [(determined at an earlier step)], age, education, and work experience."  20 C.F.R. 416.912(g) (citations omitted).  The Commissioner may meet this burden through the testimony of a vocational expert.  *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

The Magistrate Judge concluded that "the Law Judge erred by discounting the uncontroverted opinions of the two examining psychologists, Samuel J. Fletcher, Ph.D. and

6

Karen Russell, Ph.D" at the fifth step of the review.  I disagree.  The record indicates that substantial evidence supported the ALJ's decision to discount the opinion of Dr. Fletcher and that the ALJ in fact properly relied on the opinion of Dr. Russell.

The ALJ gave less weight to Dr. Fletcher's opinion because Hailey injured his foot the day before the examination with Dr. Fletcher.  Indeed, Dr. Fletcher himself noted in his report that Hailey walked with a limp and stated that he had stepped on a nail the previous day.  Consequently, the ALJ found that Hailey's recent injury caused him to test lower on the WAIS-III intelligence test administered by Dr. Fletcher.  As a result, the ALJ found Dr. Fletcher's assessment of Hailey's intelligence to be inaccurate, especially in light of the fact that the Navy would not likely have admitted a person with the IQ scores found by Dr. Fletcher.  The ALJ concluded that this flawed intelligence test colored the rest of Dr. Fletcher's conclusions.  Thus, more than a scintilla of evidence supports the ALJ's decision to discount Dr. Fletcher's opinion.

The Magistrate Judge also found that the ALJ ignored Dr. Russell's opinion that

> [Hailey] is not likely able to tolerate the usual stressors encountered in competitive work.  If work was not interpersonally based and he was left alone to perform simple repetitive tasks, he would quite possibly perform independently without too much difficulty; however, if there were interruptions in the work and he was asked to be doing additional activities, he would likely have increasing episodes of anxiety that would then lead to him becoming possibly violent and/or walk off the job.

In light of this opinion and the findings of Dr. Fletcher, the Magistrate Judge concluded that substantial evidence supported the conclusion that Hailey could not tolerate the amount of stress normally found in competitive work.  In contrast, I believe that this paragraph does not necessarily support the conclusion that Hailey's impairments prevented him from successfully performing any work.  Rather, the statement simply means that Hailey could only perform simple tasks that involved no interaction with others.  This reading seems to better comport with

7

the rest of Dr. Russell's findings. Dr. Russell also concluded that Hailey "is likely able to perform work activities on a consistent basis," "is likely able to maintain regular attendance in a workplace," "would likely benefit from work duties that are simple and repetitive and of a rote-task nature," and most tellingly had a only a moderate limitation in his ability to "respond appropriately to work pressures in a usual work setting." Moreover, on the accompanying work sheet with her report, Dr. Russell found that Hailey did not have any marked or extreme impairments in his ability to perform work related activities. Therefore, I believe that substantial evidence supports the ALJ's decision to rely on Dr. Russell's report to determine that Hailey's work related abilities were only slightly or moderately impacted. Moreover, this conclusion does not conflict with Dr. Russell's finding that Hailey would have difficulties with the normal stressors of a work environment. When read in context, that statement finds Hailey's abilities to work limited but not precluded.

Last, the Magistrate Judge noted that at the April 19, 2006 hearing, the ALJ asked the VE whether a person who suffered from the mental limitations described in Dr. Russell and Dr. Fletcher's reports could find work in the national economy. The VE opined that a person with the mental limitations identified by Dr. Russell could find work but that a person with the mental limitations identified by Dr. Fletcher could not. Hailey's counsel then asked the VE whether a person "not likely able to tolerate the usual stressors encountered in competitive work" could adapt to the types of jobs the VE found available to a person with the limitations identified by Dr. Russell. The VE replied that such a person would not be able to find work in the national economy. The Magistrate Judge found that the ALJ erred in deciding that Hailey could adjust to a different type of work in light of the VE's response to the question posed by Hailey's attorney.

The Fourth Circuit has noted that "for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of claimant' impairments." *Walker*, 889 F.2d at 50 (internal citations omitted). In this case, the ALJ's original question to the VE best met the Fourth Circuit's standard. That question fairly summarized all of the results of Dr. Russell's findings, including her conclusion that Hailey was only moderately limited in is ability to respond appropriately to work pressures. In contrast, the hypothetical question asked by Hailey's attorney merely contained one sentence from Dr. Russell's report. As discussed above, the impact of that sentence is considerably modified by the rest of the paragraph in which it appears, but Hailey's attorney did not include the rest of that paragraph in his hypothetical to the VE. Therefore, the VE's response to that question would not be relevant under Fourth Circuit law because it was not based on a complete reading of the relevant section of Dr. Russell's report. Consequently, I find that substantial evidence supports the ALJ's decision to rely on the VE's response to his initial hypothetical based on Dr. Russell's report and discount the VE's response to the hypothetical posed by Hailey's attorney.

## IV. CONCLUSION

For the reasons stated herein, I will **reject** the Magistrate Judge's *Report and Recommendation* and will **sustain** the Commissioner's *Objections*. The Commissioner's final decision denying the Plaintiff's claim for benefits will therefore be **affirmed,** and judgment will be **granted** for the Commissioner. This case will be **dismissed** from the docket of this Court.

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 13th day of April, 2007.

                                                    s/Jackson L. Kiser
                                                    Senior United States District Judge